**COUNTY MARKET, Relator,**

v.

**Joel DAHLEN, Department of Jobs and Training, Respondents.**

**No. C5–86–1030.**

Court of Appeals of Minnesota.

Nov. 18, 1986.

Eugene J. Crosby, Faribault, for relator.

Joel Dahlen, pro se.

Hubert H. Humphrey, III, State Atty. Gen., Peter C. Andrews, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by FOLEY, P.J., and SEDGWICK and FORSBERG, JJ., with oral argument waived.

## OPINION

FOLEY, Judge.

Relator County Market seeks review of a determination that respondent Joel Dahlen did not voluntarily quit his job. We affirm.

## FACTS

Dahlen was employed by County Market as a baker from September 9, 1985 to January 18, 1986. During that time, he missed three days of work but received no warnings regarding his attendance. On one occasion he was sick, on another he could not get to work because of snow, and once he had received permission to take the day off to go hunting.

On January 20, 21, and 22, Dahlen had strep throat and did not go to work. Each day he called in to report his absence. On January 23, when Dahlen reported for work, the bakery manager told him not to bother punching in. When Dahlen asked why, the bakery manager responded: "That's pretty obvious, you've missed too many days." The bakery manager also stated that if Dahlen had any questions, he should see the general manager. Believing that he was fired and that it would do no good to speak to the general manager, Dahlen left the premises and drove home.

A Commissioner's representative found that Dahlen was entitled to receive unemployment compensation benefits because he did not quit but rather left County Market because of an honest belief that he had been discharged. The representative also determined that Dahlen's absences did not constitute misconduct. County Market has appealed only from the determination that Dahlen did not voluntarily quit his job.

## ISSUE

Does the record support the Commissioner's determination that Dahlen did not voluntarily terminate his employment?

## ANALYSIS

An employee who voluntarily quits his job is not entitled to receive unemployment compensation benefits. Minn.Stat. § 268.-09, subd. 1(1) (1984). The employer has the burden of proving that an employee voluntarily terminated his employment. *Marz v. Department of Employment Services*, 256 N.W.2d 287, 289 (Minn.1977). Whether an employee was discharged or quit voluntarily is a question of fact, *Hollar v. Richard Manufacturing Company*, 346 N.W.2d 692, 694 (Minn.Ct.App.1984). Thus, the Commissioner's decision here cannot be overturned if there is evidence in the record which reasonably tends to sustain that decision. *White v. Metropolitan Medical Center*, 332 N.W.2d 25, 26 (Minn. 1983).

In *Wallace W. Carlson Company v. Hasler*, 351 N.W.2d 688 (Minn.Ct.App. 1984), an employee had left his place of employment before completing his shift, due to an erroneous belief that he had been discharged. The *Hasler* court concluded that the employee's action did not constitute misconduct, since the employee honestly believed he had been discharged. *Id.* at 690–91. In *Midland Electric, Inc. v.*

*Johnson,* 372 N.W.2d 810 (Minn.Ct.App. 1985), the court applied the *Hasler* reasoning in a slightly different context, determining that an employee did not voluntarily quit his employment when he failed to appear for work due to a reasonable belief that he had been discharged. *Johnson,* 372 N.W.2d at 812.

Here, Dahlen's testimony supports the determination by the Commissioner that Dahlen believed in good faith he was fired. The record would also support a determination that this belief was reasonable under the circumstances. Dahlen testified that he was told he need not bother punching in since he had missed too many days.

County Market argues that Dahlen's belief was not reasonable, since the general manager only intended to make sure that Dahlen was well enough to work. Nonetheless, as this court stated in both *Hasler* and *Johnson,* the employer's intent is immaterial; what is important is the employee's perception of the situation and his or her response thereto.

## DECISION

The record supports the determination by the Commissioner that Dahlen left his job due to a good faith belief that he had been fired.

Affirmed.