Phillip L. GOODWIN, Relator,

v.

BPS GUARD SERVICES,
INC., Respondent,

Commissioner of Economic
Security, Respondent.

No. C3–94–973.

Court of Appeals of Minnesota.

Nov. 22, 1994.

Richard H. McGuire, Minneapolis, for relator.

Sally A. Scoggin, Briggs & Morgan, St. Paul, for BPS Guard Services, Inc.

Kent E. Todd, St. Paul, for Commissioner of Economic Sec.

Considered and decided by PETERSON, P.J., and LANSING and HUSPENI, JJ.

## OPINION

LANSING, Judge.

This is an appeal from the Commissioner's denial of reemployment insurance benefits.

The employee asserts that a demotion provided good cause to quit. Because the demotion resulted from the employee's misconduct, we affirm the Commissioner's denial.

## FACTS

BPS Guard Services employed Phillip Goodwin as a security officer supervisor. In October 1993 Goodwin failed to report for his assigned shift three times. An employee's unreported absence is grounds for termination from employment with BPS.

In early November, a BPS personnel specialist informed Goodwin that he was being removed from his supervisory position as a result of the three unreported absences. Goodwin was offered a non-supervisory security guard position paying $6.50 to $7.00 per hour, depending on location. Goodwin had earned $8.30 per hour before the demotion. Goodwin was offered the choice of working any shift, at any location, and for any manager.

Goodwin declined the non-supervisory position and applied to the Department of Economic Security for reemployment insurance benefits. A Department adjudicator initially granted Goodwin's claim for benefits, but following an appeal and a hearing, a referee denied benefits based on a finding that Goodwin had voluntarily quit his job without good cause attributable to BPS. The Commissioner's representative affirmed the referee after refusing Goodwin's request to consider new evidence or to remand.

## ISSUES

I. Did the Commissioner's representative err by concluding that Goodwin voluntarily quit his job without good cause attributable to BPS?

II. Did the Commissioner's representative err by refusing to remand to the referee for a rehearing?

## ANALYSIS

### I

■ An individual who voluntarily quits a job without good cause attributable to the employer is disqualified from receiving reemployment insurance benefits. Minn.Stat. § 268.09, subd. 1(a) (1992). Whether an employee quit or was discharged is a question of fact. *Midland Elec., Inc. v. Johnson,* 372 N.W.2d 810, 812 (Minn.App.1985). But the determination of good cause to quit is a question of law that must be applied to facts that have reasonable support in the record. *Zepp v. Arthur Treacher Fish & Chips, Inc.* 272 N.W.2d 262, 263 (Minn.1978).

■ The evidence is undisputed that Goodwin had three unreported absences in October 1993 that resulted in a demotion. BPS offered Goodwin continuing employment as a nonsupervisory security officer, but Goodwin chose to discontinue his employment. *See Bergseth v. Zinsmaster Baking Co.,* 252 Minn. 63, 65–66, 89 N.W.2d 172, 174 (1958) (defining "voluntarily quitting" as discontinuing employment because the employee no longer desires to remain in the employment relationship).

Although Minnesota appellate cases have not directly addressed demotions related to misconduct, several cases have applied a voluntary quit analysis when considering employees' separations due to demotions. In *Marty v. Digital Equipment Corp.,* the supreme court considered whether an employee's refusal to accept a demotion provided her with good cause to quit. 345 N.W.2d 773 (Minn.1984). In *Polley v. Gopher Bearing Co.,* we considered whether an employee had good cause to quit her job when her employer demoted her upon her return from a maternity leave. 478 N.W.2d 775 (Minn.App. 1991).

When an employer discharges an employee for misconduct, the employee is disqualified from receiving reemployment insurance benefits. Minn.Stat. § 268.09, subd. 1(b) (1992). We think that it is consistent with the statutory framework to extend that analysis to hold that in situations in which an employer demotes an employee for misconduct warranting discharge, an employee who leaves employment should be disqualified from receiving benefits.

This analysis is consistent with decisions from other jurisdictions. *See, e.g., Dawe v. Review Bd.,* 177 N.E.2d 472, 475–76 (Ind.Ct.

App.1961) (affirming Review Board finding that employee voluntarily quit without good cause following demotion due to employee's absenteeism); *Unemployment Compensation Bd. of Rev. v. Tune,* 23 Pa.Cmwlth. 201, 350 A.2d 876, 877 (1976) (holding employee did not have good cause to quit after demotion for engaging in altercation with coworker); *ABC Auto Parts, Inc. v. Florida Dep't of Labor & Employment Sec.,* 372 So.2d 197, 199 (Fla.Dist.Ct.App.1979) (determining no good cause to quit when employee's demotion results from own misconduct).

## II

The Commissioner is accorded deference when exercising discretion to decide remand requests, and this court has declined to overrule the Commissioner when the refusal to remand was based on a party's failure to submit testimony at the referee hearing. *See, e.g., Turnquist v. Amoco Oil Co.,* 397 N.W.2d 442, 444–45 (Minn.App.1986) (affirming Commissioner's refusal to remand for additional testimony even though party was not represented by counsel at the hearing); *Wicker Enters., Inc. v. Dahler,* 347 N.W.2d 543, 544 (Minn.App.1984) (affirming Commissioner's refusal to remand when party failed to attend the hearing because of a conflict and never requested a continuance).

Goodwin obtained an initial continuance and promptly notified the Department that his new employment conflicted with the second hearing date. The Department's rules allow only one rescheduling except in the case of an emergency. Minn.R. 3310.2908 (1993). The Department's rules further provide for a telephone conference hearing when an in-person hearing is impractical. Minn.R. 3310.2906 (1993).

There was no evidence of an emergency, and Goodwin did not demonstrate any efforts to obtain his employer's permission to attend the hearing. More importantly, before the hearing was scheduled, Goodwin did not suggest to the Department a date or time that he could be available either in person or by telephone.

Under ordinary circumstances if a party cannot attend a hearing and provides advance notice to the Department, the hearing should be rescheduled. The Department should take reasonable measures to make a hearing available to all parties. But here, Goodwin requested that the hearing be rescheduled without providing information on when he would be available. The referee rescheduled the hearing once at Goodwin's request. The Commissioner's refusal to grant a rehearing based on Goodwin's scheduling conflict did not constitute an abuse of discretion.

## DECISION

The Commissioner's representative did not err by refusing to remand or by concluding that Goodwin did not have good cause to quit his job.

**Affirmed.**