*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0853**

Michael Rahier,
Relator,

vs.

Valley Markets, Inc. – Hugo's,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed January 20, 2015
Affirmed
Connolly, Judge**

Department of Employment and Economic Development
File No. 31917527-5

Michael Rahier, Newfolden, Minnesota (pro se relator)

Valley Markets, Inc.-Hugo's, Grand Forks, North Dakota (respondent)

Lee B. Nelson, Minnesota Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Connolly, Presiding Judge; Halbrooks, Judge; and Bjorkman, Judge.

UNPUBLISHED OPINION

**CONNOLLY**, Judge

In this certiorari appeal, relator challenges the unemployment-law judge's (ULJ) conclusion that he was discharged for employment misconduct and ineligible for unemployment benefits. We affirm.

## FACTS

Relator Michael Rahier worked for the supermarket Valley Markets, Inc.-Hugo's (Hugo's) from February 2013 until October 30, 2013. Relator was tasked with maintenance and stocking duties. While working at Hugo's, relator often used the back door to go out to his vehicle, which he parked behind the store. Hugo's requires all employees to park in designated areas and prohibits employees from using the back delivery door for personal use. On September 9, 2013, the store director met with relator and gave him a verbal warning to not use the back receiving door. He also told relator not to park behind the store and to instead park in the front or side parking lots.

After receiving this warning, relator continued to park behind the store and use the back receiving door to go to his vehicle during his shift. On October 28, the head receiver saw relator use the back door. He told relator that he could not use the back door and reported the incident to the store director. On October 29, the head receiver again saw relator use the back door to go to his vehicle during his shift and prop the door open with a piece of cardboard. When relator returned, he rang the back doorbell to reenter the store. The head receiver told relator that he could not use the back door and that he

would have to walk around to the front door. Relator pushed his way through the back door, and the head receiver immediately reported this incident to the store director.

Hugo's also has a store policy that employees may not consume food on the sales floor. On one occasion, relator ate a handful of chocolate chips after a bag broke on the sales floor. Relator also worked on Hugo's maintenance projects at home without obtaining permission and requested overtime pay for his work on those projects.

On October 30, 2013, Hugo's discharged relator for using the back receiving door, consuming food on the sales floor, and for working on unauthorized projects at home. After Hugo's terminated relator's employment, relator applied for unemployment benefits. The Minnesota Department of Employment and Economic Development (DEED) found that he was ineligible for unemployment benefits because he was discharged for employment misconduct. Relator appealed the determination and a ULJ conducted a de novo telephone hearing. The ULJ concluded that relator was discharged for employment misconduct and ineligible for unemployment benefits. Relator requested reconsideration and the ULJ affirmed his decision.

## D E C I S I O N

Relator argues that he did not commit employment misconduct when he used the back door to go to his truck because he received permission to do so.[1] We disagree. This court may affirm or remand the ULJ's decision, or it may reverse or modify the decision if the substantial rights of the petitioner may have been prejudiced because the findings,

---

[1] The ULJ found that relator also violated store policies by eating on the sales floor and by working on unauthorized projects at home. Relator does not challenge these findings.

3

inferences, conclusion, or decision are, among other things, made upon unlawful procedure or unsupported by substantial evidence in view of the entire record. Minn. Stat. § 268.105, subd. 7(d) (2014). Substantial evidence is defined as: "1. Such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; 2. More than a scintilla of evidence; 3. More than some evidence; 4. More than any evidence; and 5. Evidence considered in its entirety." *Cable Commc'ns Bd. v. Nor-west Cable Commc'ns P'ship*, 356 N.W.2d 658, 668 (Minn. 1984).

The ULJ concluded that relator was discharged for employment misconduct and that his "intentional failure to comply with the employer policies [shows] a substantial lack of concern for the employment." Whether an employee engaged in employment misconduct is a mixed question of fact and law. *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002). Whether a particular act constitutes employment misconduct is a question of law, which this court reviews de novo. *Scheunemann v. Radisson S. Hotel*, 562 N.W.2d 32, 34 (Minn. App. 1997). But whether the employee committed the particular act is a question of fact. *Id.*

An employee who is discharged from employment for misconduct is ineligible to receive unemployment benefits. Minn. Stat. § 268.095, subd. 4(1) (2014). Employment misconduct means "any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." Minn. Stat. § 268.095, subd. 6(a) (2014). Generally, an employee's

4

refusal to abide by an employer's reasonable policies and requests amounts to disqualifying misconduct. *Schmidgall,* 644 N.W.2d at 804.

We conclude that the record substantially supports the ULJ's determination that relator is ineligible for unemployment benefits because he was discharged for employment misconduct. The store director testified that Hugo's has a store policy that prohibits employees from using the back door and another that requires all employees to park in designated areas. The store director also testified that relator knew about these policies because he received verbal and written warnings after violating the policies on three occasions prior to being discharged.

The head receiver testified that, on October 28 and 29, he observed relator use the back door during his shift to go to his truck, which was parked behind the store. He also testified that he saw relator prop the back door open with a piece of cardboard. Although relator argues that he had to use the back door for a legitimate business purpose on October 29, the ULJ did not find his testimony to be credible and found that "credible evidence shows that he used the back door to go out to his vehicle." We defer to the ULJ's credibility determination. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006).

Relator also argues that the employer's stated reasons for his discharge were pretextual because he was discharged for complaints he made about health insurance, overtime pay, and safety problems. We disagree. If an applicant for unemployment benefits claims that the stated reason for his discharge was pretextual, the ULJ must allow the applicant to present evidence on that claim. *Scheunemann*, 562 N.W.2d at 34.

5

"When the reason for the discharge is disputed, the hearing process must allow evidence on the competing reasons and provide factual findings on the cause of discharge." *Id.* "The [ULJ] is then obligated to weigh the evidence, determine credibility, and make a determination on the reasons for the discharge." *Id.*

Relator did not present any evidence on this theory to the ULJ. *See Eisenschenk v. Eisenschenk*, 668 N.W.2d 235, 243 (Minn. App. 2003), *review denied* (Minn. Nov. 25, 2003) ("A party cannot complain about a district court's failure to rule in [the party's] favor when one of the reasons it did not do so is because that party failed to provide the district court with the evidence that would allow the district court to fully address the question."). And the record does not support relator's argument that Hugo's terminated relator's employment in retaliation for his complaints. Consequently, we conclude that the ULJ did not err by determining that relator is ineligible for unemployment benefits because he committed employment misconduct.

**Affirmed.**